# NO. 12-24-00036-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ENRIQUE RAYMON TURNER, APPELLANT* | § | *APPEAL FROM THE 402ND* |
| | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| | § | *WOOD COUNTY, TEXAS* |
| *THE STATE OF TEXAS, APPELLEE* | | |

## *MEMORANDUM OPINION*

Enrique Raymon Turner appeals his assault conviction. In two issues, Appellant challenges the trial court's (1) admission of Appellant's own bond reduction hearing testimony in the trial's punishment phase and (2) denial of his request to ask the jurors whether they saw him outside the courtroom in shackles and a prison jumpsuit. We affirm.

## BACKGROUND

Appellant was charged by indictment with assault causing bodily injury against a peace officer, enhanced by a prior felony conviction.[1] At a pretrial hearing, his counsel called him to the witness stand to testify in favor of a bond reduction. On cross-examination, the State elicited evidence of Appellant's criminal history. Later, Appellant pleaded "not guilty," and the matter proceeded to a jury trial. After hearing the evidence of Appellant's guilt, the jury found him "guilty" as charged.

Prior to the punishment phase, Appellant asked the trial court to question the jurors regarding whether they saw Appellant—who was brought to court in restraints—that morning

---

[1] A second-degree felony, enhanced to a first-degree felony, punishable by imprisonment for life or any term of not more than ninety-nine or less than five years and a possible fine not to exceed $10,000.00. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), (b-2) (West Supp. 2024); 12.42(b) (West 2019); 12.32 (West 2019).

before they saw him in the courtroom. After hearing testimony from Wood County Sheriff's Sergeant Alvie Lynn Bettis, who escorted Appellant that morning, the court denied the request.

In the punishment phase, the State introduced a transcript of Appellant's bond hearing testimony regarding his criminal history. The evidence was admitted without objection. Ultimately, the jury assessed Appellant's punishment at imprisonment for a term of thirty-five years and a $7,500.00 fine. This appeal followed.

## BOND REDUCTION TESTIMONY

In Appellant's first issue, he argues that the trial court violated his Fifth Amendment right against self-incrimination by allowing the State to admit his testimony from the bond hearing. He cites *Simmons v. United States*, in which the United States Supreme Court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *See Simmons*, 390 U.S. 377, 394, 88 S. Ct. 967, 976, 19 L. Ed. 2d 1247 (1968). In *Simmons*, the court observed that the defendant "was obliged either to give up what he believed, with advice of counsel, to be a valid Fourth Amendment claim or, in legal effect, to waive his Fifth Amendment privilege against self-incrimination." *See id.* "In these circumstances, [the court found] it intolerable that one constitutional right should have to be surrendered in order to assert another." *See id.*

Appellant contends that, similarly, to assert his Eighth Amendment right against excessive bail, "his only choice" was to waive his Fifth Amendment privilege against self-incrimination. Therefore, he urges, we should hold that the trial court erred in admitting the testimony and remand the case for a new punishment hearing. We decline to do so.

To preserve a complaint for appellate review, a party must present a timely request, objection, or motion that states the specific ground for the desired ruling unless it was apparent from the context. *See* TEX. R. APP. P. 33.1. The record does not reflect that Appellant raised this issue at any time in the trial court. We conclude that he has not preserved his complaint for our review. *See id.* Moreover, even if Appellant preserved this issue, he fails to explain how personally testifying at the bond hearing was "his only choice" to assert his Eighth Amendment right against excessive bail. *See*, *e.g.*, *Porretto v. Stalder*, 834 F.2d 461, 465-66 (5th Cir. 1987) (distinguishing *Simmons* where defendant's bail testimony was admitted at trial, noting he was

2

represented and called by own counsel at bail hearing, and failed to show he was "compelled . . . to waive his right against self-incrimination in order to pursue his right to bail"). For these reasons, we overrule Appellant's first issue.

## PHYSICAL RESTRAINTS

In Appellant's second issue, he argues that the trial court erred by denying his request to question the jurors regarding whether they saw him before entering the courtroom. Based on the record, we cannot agree.

On the morning the punishment phase began, Appellant raised a concern that one or more jurors might have seen him "in his jail clothes, waist belt, handcuffs, [and] leg chains" during his transport from the jail into the courthouse. The trial court allowed Appellant to call Sergeant Bettis for questioning regarding that issue. Bettis testified, in pertinent part, as follows:

> DEFENSE COUNSEL: This morning, when did you first have a chance to observe my client, Mr. Turner?
>
> BETTIS: When the patrol car pulled up, Deputy Burge got out, went over to the passenger side. We had a female that was on the jury coming in in front. She went, took a left down the hallway to the restroom, at which point we got Mr. Turner out of the car, brought him down the hallway to the elevator, upstairs, and right into the courtroom.
>
> DEFENSE COUNSEL: Okay. Was Mr. Turner brought into the courtroom through the same entrance that the—our jurors would have been using?
>
> BETTIS: Yes, sir.
>
> DEFENSE COUNSEL: And did the patrol car pull up to the courthouse in an area where our jurors could have been parked in their cars and could have observed him being moved from the patrol car into the courthouse?
>
> BETTIS: Potentially, but there wasn't anybody in a vehicle other than the female when he came into the courthouse, and she had already—
>
> DEFENSE COUNSEL: The female was in what courthouse—I mean, in what car?
>
> BETTIS: She drives—I believe she drives a red Ford pickup truck and usually she parks over in front of the People's Telephone.
>
> DEFENSE COUNSEL: Okay. Did you—were you able, from your point of view, to scan all the other cars that would have had a view of Mr.—
>
> BETTIS: No, sir.
>
> DEFENSE COUNSEL: —Turner? So there may have been other jurors that could have seen that?

BETTIS: No other jurors had come in after that female did that I'm aware of.

DEFENSE COUNSEL: Okay. Now, once he was brought into the Courthouse, you were with him throughout his movements to the courthouse into this courtroom?

BETTIS: Yes, sir.

DEFENSE COUNSEL: And based on your observations, was he observed by any of our jurors?

BETTIS: No, sir.

DEFENSE COUNSEL: Okay. And what happened when he walked into this courtroom?

BETTIS: When he walked in, you immediately advised that he needs to be in street clothes.

DEFENSE COUNSEL: Okay. And where was he placed?

BETTIS: Into the holding cell.

DEFENSE COUNSEL: And is that a location where the jurors could not see him?

BETTIS: Correct.

DEFENSE COUNSEL: Okay.

. . . .

PROSECUTOR: Sergeant Bettis, other than that female juror, were there any other jurors near the defendant from the time you brought him from the car into the courtroom?

BETTIS: No, sir.

PROSECUTOR: At the time—after the time he entered the courtroom, did any of the jurors enter the courtroom?

BETTIS: No, sir.

Following Bettis's testimony, and without further objection, the court denied the request to ask the jurors whether they observed Appellant that morning.

On appeal, without citation to authority,[2] Appellant contends the denial of the request was error. He argues that, even after Sergeant Bettis's testimony, "it was not clear whether or not any juror had previously seen Appellant prior to entering the courtroom." "The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits the use of physical restraints on a criminal defendant that are visible to the jury at trial." *Gennusa v. State*, 689 S.W. 3d 320, 322-23 (Tex. Crim. App. 2024) (Slaughter, J., concurring) (citing *Deck v.*

---

[2] *See* TEX. R. APP. P. 38.1(i) (requiring brief to contain clear and concise argument with appropriate citations to authorities).

4

*Missouri*, 544 U.S. 622, 629, 125 S. Ct. 2007, 2012, 161 L. Ed. 3d 953 (2005)). The Texas Court of Criminal Appeals has demonstrated "an appropriate unwillingness to make the factual assumption that the jury perceived a defendant's shackles in the absence of any record support." *Bell v. State*, 415 S.W.3d 278, 282 (Tex. Crim. App. 2013). "Shackling error may rise to the level of constitutional error when the record reflects a reasonable probability that the jury was aware of the defendant's shackles." *Id.* at 283. "Reasonable probability" does not necessarily mean "more probable than not," but "simply requires a substantial basis supporting a conclusion that the jury perceived the defendant's restraints." *Id.* After reviewing the record, we cannot conclude there is a reasonable probability that any juror saw Appellant in restraints. Accordingly, we conclude that Appellant fails to show error of constitutional dimension. *See id.* We overrule Appellant's second issue.

### DISPOSITION

Having overruled Appellant's two issues, we ***affirm*** the trial court's judgment.

BRIAN HOYLE
Justice

Opinion delivered October 9, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 9, 2024**

**NO. 12-24-00036-CR**

**ENRIQUE RAYMON TURNER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 402nd District Court
of Wood County, Texas (Tr.Ct.No. 25,122-2022)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*